**Patricia Barrett SNYDER, Plaintiff,**

v.

**Byron MAJOR, M.D. and Byron Major P.C., Defendants,**

**Patricia Barrett SNYDER, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, Defendant.**

Nos. 85 CV 9812 (KMW), 87 CV 8559 (KMW).

United States District Court, S.D. New York.

April 12, 1993.

in actions at law in the courts of the United States ...

Thomas A. Andrews, New York City, for plaintiff.

Garrett P. Lewis, Bower & Gardner, David H. Sculnick, Gordon & Silber, New York City, for defendants.

## OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Plaintiff moves for reargument of the court's earlier decision, reported at 789 F.Supp. 646 (S.D.N.Y.1992), in this declaratory judgment action against defendant National Union Fire Insurance Company ("National Union"). The facts of this case are fully recounted in that opinion. Upon reconsideration of the issues before me, I partially grant and partially deny the motion.

Plaintiff argues primarily that in interpreting the insurance policy at issue, I did not apply New York's governing law correctly. Plaintiff points out that New York law requires that "where there is ambiguity as to the existence of coverage, doubt must be resolved in favor of the insured and against the insurer." *Lavanant v. General Accident Ins. Co.*, 79 N.Y.2d 623, 584 N.Y.S.2d 744, 747, 595 N.E.2d 819, 822 (1992). However, it is also true that "[u]nambiguous provisions of a policy are given their plain and ordinary meaning," *id.*, and that, presented with unambiguous terms, "courts should refrain from rewriting the agreement," *United States Fidelity & Guaranty Co. v. Annunziata*, 67 N.Y.2d 229, 501 N.Y.S.2d 790, 791, 492 N.E.2d 1206, 1207 (1986). "The language of a contract is not made ambiguous simply because the parties urge different interpretations." *Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (applying New York law).

In this case, plaintiff asserts that I did not correctly apply New York law in interpreting the term "medical incident" as excluding Doctor Major's sexual misconduct with plaintiff. The policy defines a "medical incident" as any act or omission "in the furnishing of or failure to furnish health care services including but not limited to the furnishing of food, beverages, medications or appliances in connection with such services...." Applying New York decisional law on related subjects and decisional law from other jurisdictions on this same issue, I interpreted the policy as unambiguously granting coverage only for liability flowing from any act of providing medical services, and not—as plaintiff urges—from any act occurring during the time when a patient is visiting a doctor for the provision of medical services. Because I continue to find that the unambiguous and plain meaning of the provision bars coverage of sexual abuse that is unrelated to the providing of medical services except for the fact that it occurs in a doctor's office, I decline to alter my earlier decision in this respect.

■ However, I do find it necessary to modify my earlier opinion in a different respect. Upon further review, I conclude that plaintiff may be able to prove at trial that Ms. Snyder's alleged injuries actually did result from acts of providing medical services rather than solely from Dr. Major's independent acts of sexual abuse. The amended complaint alleges that Ms. Snyder suffered injuries attributable to Dr. Major's allegedly negligent use of certain sedating drugs in the course of performing the medical procedure. It asserts that the injections "rendered plaintiff unconscious and thereafter stuporous and mentally impaired and had the foreseeable side effect of stimulating her libido and diminishing her sexual inhibitions," and that defendant knew or should have known of those potential effects. Amended Complaint ¶¶ 11–12. Nevertheless, it asserts, Dr. Major did not seek or obtain Ms. Snyder's informed consent before administering those drugs. *Id.* ¶ 10.

These allegations suggest that it may be possible at trial for Ms. Snyder to prove that her injuries resulted from an act covered by the policy—the negligent [1] provision of medical services. Of course, to trigger the indemnification duty, she will have to prove at trial each element required by tort law—duty, breach, causation and injury—for *a covered* act, not just for any wrongful act, committed by Dr. Major. Thus, to establish coverage, she will have to show that Dr. Major breached a duty of care in choosing and administering the drugs he used—that is, that he was negligent. For example, she may be able to show that a doctor exercising due care would not have used the drugs Dr. Major used for the procedure he intended to perform, or that a doctor exercising due care would have known of the alleged side effects and would have warned Ms. Snyder of them. She will also have to show that the negligent breach caused her injury. For example, she could prove that the negligent use of those drugs caused Ms. Snyder to make sexual advances to Dr. Major and that Dr. Major had intercourse with her because of those advances. If—with respect to an act of furnishing medical services—she proves breach of duty and causation at trial, the operative provision of the policy will impose a duty upon National Union to indemnify Dr. Major for any damage award resulting therefrom, because such damage would result from an act "in the furnishing of or failure to furnish health care services." Consequently, granting National Union's motion for declaratory judgment is at this point improper.

I note, however, that declaratory judgment *against* National Union is also improper at this time. That is because the complaint appears to posit another theory by which to hold Dr. Major, but not National Union, liable, *i.e.,* one that does not depend on finding that Dr. Major negligently furnished medical services. It is entirely possible that the jury may conclude that Dr. Major sexually abused Ms. Snyder, but that the abuse did not occur "in the furnishing of ... health care services." If the jury so finds, then Dr. Major's liability will not arise from a "medical incident" as defined by the policy, and National Union will have no indemnification duty.

Moreover, the jury could make two other findings that would preclude coverage. First, if the jury concludes that Dr. Major intentionally injured Ms. Snyder, New York State's public policy will preclude indemnity. *See Public Serv. Mutual Ins. Co. v. Goldfarb,* 53 N.Y.2d 392, 442 N.Y.S.2d 422, 426, 425 N.E.2d 810–814 (1981). Second, if the jury finds Dr. Major liable for an act it characterizes as a criminal act, the policy's Exclusion F will allow National Union to decline to indemnify Dr. Major. Ms. Snyder argues that Exclusion F, the text of which is laid out in the margin,[2] allows National Union to deny indemnification only if the insured is

---

1. In using the term "negligent" here, I do not intend to intimate that either tort law or the policy limits liability to negligent acts. I use that term, instead, as a proxy for an otherwise unwieldy list of qualifier terms, including "wantonly" and "recklessly," that trigger Dr. Major's liability and/or National Union's duty to indemnify.

2. Exclusion F provides that the policy does not extend coverage to liability "arising out of the performance of a criminal act; provided, that this exclusion shall not apply with respect to defense of suits unless the additional insured is convicted in a criminal prosecution based on such acts or omissions for which claim or suit is brought against the insured."

convicted of a criminal act. The provision's unambiguous language, however, does not support her proffered interpretation; the provision distinguishes between *performance* of a criminal act and *conviction* in a criminal prosecution. Exclusion F provides that notwithstanding the policy's exclusion of coverage for *liability* flowing from *performance* of a criminal act, the insurer has a duty to *defend* unless the insured is criminally convicted.

For the reasons stated above, the motion for reargument is partially granted to the extent that National Union is not now entitled to a declaratory judgment that it has no duty to indemnify Dr. Major under any circumstances. If the jury finds that Ms. Snyder's injuries resulted from Dr. Major's negligent provision of medical services, that Dr. Major did not intentionally injure Ms. Snyder, and that he did not commit a criminal act, then National Union will have a duty to indemnify Dr. Major.

The court has scheduled a pre-trial conference for April 23, 1993 at 4:00 p.m.

SO ORDERED.